## GAMMON v. RAMSEY.

(Circuit Court of Appeals, Third Circuit. July 12, 1926.)

No. 3404.

1. **Corporations** ⊂⊃104—**Stockholder of mining company cannot relocate claims held by the company for his own benefit.**

A stockholder of a mining company cannot relocate for himself mining claims held by the company, and if such relocation is made he may be compelled to convey whatever rights are acquired thereby to the corporation.

2. **Judgment** ⊂⊃243—**Court cannot order sale of property of corporation not a party to suit.**

A court is without power to order sale of property of a corporation not a party to the suit to pay a debt not its own.

3. **Corporations** ⊂⊃123(20).

Holder of stock of corporation as collateral is under duty not to diminish value of its property.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit in equity by Charles W. Gammon against Floyd Ramsey. Decree for defendant, and complainant appeals. Modified and affirmed.

John A. Hartpence and Thomas G. Haight, both of Jersey City, N. J., for appellant.

Carlyle Garrison, of Jersey City, N. J., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and GIBSON, District Judge.

WOOLLEY, Circuit Judge. The complainant filed a bill in equity praying that a contract between him and the defendant, under which the defendant held his promissory notes, be rescinded; that an accounting be had of moneys expended; that collateral and bonus stock held by the defendant be redelivered to him; and that, pending the suit, the defendant be enjoined from selling the collateral and disposing of his notes.

The complainant has appealed from the two decrees entered by the court; one interlocutory, the other final. Together they disclose fairly well the character of the controversy.

The court, by its decrees, drawn with meticulous attention to details, confirmed two reports of special masters to whom the highly confused issues of fact had been referred for evidence and, approving the masters' findings, denied relief to the complainant and awarded relief to the defendant. The most important of these findings are the following:

The complainant is indebted to the defendant on notes in the sum of $104,957.52 for moneys which the latter had advanced and properly expended in exploring and developing two groups of mining claims in Shasta county, California, one known as the Shasta-Kennett Group, patented to and owned by the Shasta-Kennett Copper Mining Company, and the other known as the Shasta May Blossom Group, located by, but not then patented to, the Shasta May Blossom Copper Mining & Smelting Company, both subsidiaries of the Shasta May Blossom Copper Company, Consolidated, through stock ownership, opposed to the complainant's contention that the moneys were advanced to bring the properties into paying condition and were to be repaid only from profits,—a stage never attained. There is also due the defendant from the complainant a bonus of 1,325,000 shares of the capital stock of the Consolidated, having a par value of $1 per share, pursuant to a written agreement between the parties and several supplemental written agreements which, together, the court found constituted a valid contract between them, contrary to the complainant's contention that the contract thus made up of several writings is void because inequitable, unjust, and usurious, and procured by duress, and is unenforceable because of breach by the defendant of his undertaking or obligation to keep up the assessment work, and that, anyway, the real agreement was oral and very different in terms. The court, by the final decree, directed (on default of payment of the sum found due) the sale of 4,100,000 shares of the capital stock of the Consolidated standing in the name of the complainant and held by the defendant as collateral security; and ordered that, should the sale of the collateral not produce enough money to pay the debt, relocation notices covering the 29 mining claims comprising the Shasta May Blossom Group be sold. These are notices which the complainant, on an alleged lapse of assessment work and to prevent the claims being jumped by strangers, had acquired by causing one George Q. Deane to relocate the claims, now held by and of record in the name of one A. J. Pickett. The court then directed discontinuance of a suit instituted by Pickett in a state court of California to quiet title to the claims, in which suit the defendant had filed an answer asserting paramount title thereto by reason of prior relocation which he had caused to be made by one J. W. Marshall. And, finally, the court ordered the complainant to pay certain sums for counsel fees, costs, etc.

We have, at no little labor, made a careful study of the testimony in connection with the exhaustive reports of the masters, aided by briefs which leave nothing to be desired in pertinency and volume. As no law is involved except that which applies to the particular facts in the case, we shall not extend this opinion to what would be an unreasonable length by detailing the issues, reciting the testimony, and rehearsing the processes by which we have resolved the controversy. It will be enough to say that, apart from the presumption in favor of findings of fact by the court of first instance, approving findings by masters, we are independently of opinion that the evidence sustains the findings made.

And so, in the main, we affirm the court's decrees. One aspect of the final decree, however, gives us pause. It is the part by which the court, as the last step to effect the discharge of the complainant's obligations to the defendant, ordered the sale of "all * * * relocation notices, mining locations

or mining claims, together with all the right, title and interest, estate, claim and demand whatsoever, either in law or in equity of said complainant, Charles W. Gammon and his agents and representatives, including A. J. Pickett and George Q. Deane."

[1-3] These notices, as we have said, came from relocating the 29 mining claims of the Shasta May Blossom Group which the complainant caused to be done, as he averred, for the benefit of himself and all other stockholders of the Shasta May Blossom Copper Mining & Smelting Company, the corporation then holding them. The defendant, acting through an agent, also relocated these claims, whether for himself or for the corporation is not clear. In any event, the relation of the complainant and defendant, respectively, to the company whose property was involved was such that neither could validly relocate the claims for himself. Each had a relation to the company in the nature of a trust, and whatever either did in relocating its claims should have been, and therefore must have been, for its benefit. Shortly stated, neither was in a position to jump his principal's claims. Furthermore, the complainant could not by relocating the claims of the underlying company rightfully deprive the defendant of the substance of his security; nor can the defendant, who has no dispute with that company, take its property away from its stockholders. But the decree was not confined to the sale of relocation notices. It extended to the sale of "mining locations or mining claims" of the subsidiary. We cannot see how mining locations or mining claims, property of a corporation not a party to a suit, even when that corporation is owned by another whose shares are in suit, can be ordered sold to pay a debt not its own. We think the court should not have resorted to sale of the complainant's notices of relocation or of mining locations or claims of a company outside the litigation as a means of enforcing payment of the complainant's debt. And on the same principle, we think the court should not allow the defendant to recover his debt from the sale of the complainant's shares in the Consolidated until he has given the subsidiary company holding the mining claims whatever of value there is in his relocation notices. Certainly, against both parties and their agents, the mining company is entitled to its claims.

We are therefore of opinion that the final decree should be modified in two respects: (1) That the complainant shall be required, by appropriate instruments, to convey or transfer to the Shasta May Blossom Copper Mining & Smelting Company his relocation notices, together with all his right, title and interest in them and in the claims, and, similarly, all the right, title and interest of his agents and representatives, in a manner and under conditions that will compel performance; and (2) that before the defendant shall be permitted to avail himself of the relief afforded him by the decrees, he shall, for himself and his agents and representatives, convey or transfer his relocation notices to that company, together with all their right, title and interest in them and in the claims, or otherwise surrender them for the company's benefit under such arrangement as the court may order.

When thus modified the decrees will be affirmed.